**LIVINGSTONE, Plaintiff-Appellee, v. REBMAN et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24287. Decided February 14, 1958.

Newton & Hewgley, for plaintiff-appellee.
Levin & Levin, Frank K. Levin, for defendants-appellants.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered by the Common Pleas Court of Cuyahoga County for the plaintiff on defendants' petition, filed after term, seeking to vacate a judgment by confession on a cognovit note. The allegations of the

petition are that the plaintiff on December 11, 1956, obtained judgment against the defendants on the warrant of attorney provision of a promissory note without service of summons, in the amount of $10,592.50, with interest at six per cent; that the judgment obtained was taken for more than was due and obtained by fraud practiced by the plaintiff, and that the defendants have a good defense as shown by the tendered answer. The note is for the sum of $9500.00, and is dated January 6, 1955. The allegations of the answer are that the defendants did not execute the note upon which judgment was taken and that sometime in 1954, they did sign a note for $9500.00, without cognovit provisions and without interest, which was given as part of an agreement whereby the plaintiff and another (John Ponyicky, Sr.) were to obtain for the defendants a mortgage loan on a recreational development of defendants at 5300 Oberlin Road, Black River Township, Lorain County, Ohio, in an amount between $150,000 and $200,000. That if the plaintiff and his associate were unable to procure such mortgage loan for the defendants, the note would be returned and "there would be nothing due" thereon. It is also alleged that the plaintiff and his associate failed to negotiate such mortgage loan and that said plaintiff refused, upon demand, to return the note. With the tendered answer, the defendants filed separate affidavits in which they say that the note upon which judgment was taken was not signed or executed by them and further allege (as is set out in the answer) that they signed a note for $9500.00 in 1954 for the purpose of employing the services of the plaintiff to negotiate a mortgage to finance their recreational development, and that nothing is due on said note because the plaintiff was unable to carry out his part of the agreement.

The defendants categorically deny that their respective signatures, appearing on the note, were subscribed by them. In other words, they charge "forgery." It is upon this claim, and no other, that the allegations of the petition of the defendants are based, the claim being that the judgment was taken for more than was due and was also procured by fraud. Their evidence in chief was confined completely to the issue of the genuineness of their respective signatures appearing on the note.

The plaintiff's evidence (which included several signatures of the defendants, which were admitted to be genuine, which signatures the defendants did not attempt to distinguish from the signatures on the note) included the testimony of the plaintiff and another that the note was signed by the defendants in their presence. The plaintiff also testified that he performed legal services for the defendants for which services there was an agreed fee to be paid of $12,000, $2500 of which was paid before the note here in question was signed (dated January 6, 1955, in the sum of $9500.00), which note represented the debt due for the balance of the services. Two checks of the defendant, Theresa Rebman, were introduced into evidence showing the twenty-five hundred dollar payment. The first check for $1,000, was dated December 10, 1954, bearing the notation "For Retainer Fee for 5200 Oberlin Avenue—Rebman Recreation Center," and the second check was dated December 20, 1954, for $1500, bearing notation "Proff. (Professional) Service on Oberlin Ave. Bldg., Lorain, Ohio," both notations and the body of each

check having the inescapable appearance of being in the same hand-writing. These checks were produced by the defendants while plaintiff was being examined both on direct and cross-examination which shows clearly the legal services were contracted for by them. The plaintiff also testified that the legal services for which defendants signed the note here in question were not concerned with securing a loan.

The defendant, Domonik Rebman, when called for rebuttal, said he did not make an agreement with plaintiff in September or October 1954 for legal services other than to obtain a mortgage loan or engage plaintiff to negotiate with the contractor or subcontractors before issuing the check dated December 10, 1954.

This defendant then testified:

"A. He wanted $2500 for his legal work, and he want that money ahead. He won't do nothing before that. And we make agreement to give him the check, $1,000 now, and $1500 about five or ten days later, because he want the pay for his work before he started.

"Q. How much did he say he wanted to be paid for his legal services, other than getting the mortgage loan?

"MR. NEWTON: Objection.

"A. $2500.00.

"Q. Did he say that $2500 was just a retainer, or was that all of the money?

"A. That all.

"Q. On the same day, tell us what else was done on that day between you and Mr. Livingstone.

"A. Well—

"MR. NEWTON: On what date, please?

"MR. ARNOLD LEVIN: December 10, 1954.

"A. Well I will tell you, Mr. Livingstone did not talk. Mr. Ponyicky was doing the talking.

"Q. Did you give him another note that day?

"MR. NEWTON: '54?

"MR. ARNOLD LEVIN: December 10, 1954.

"Q. The day you gave him that $1,000 check?

"A. Yes. That is the day I gave him the $9500 note.

"Q. What did it say on it?
"* * *

"Q. What did it say on it?

"A. Nothing. Just the month was on it, $9500. And I signed it, my wife signed it, and my son signed it, witness, and Mr. Ponyicky signed it, witness.

"Q. Now did it look anything like Defendants' Exhibit A?

"A. No.

"Q. Did it have any printing, such as it is on this?

"A. No printing. It was a plain note.

"Q. Do you know who wrote it out?

"A. Was nothing on it. Just the month.
"* * *

"Q. The one you signed, did it—did it say "cognovit note" on the side, like this?

"A. Nothing. Just plain.

"Q. What was the $9500 note given for?

"A. The $9500 was for the mortgage loan, if he going to get that mortgage between 150—

"MR. NEWTON: Objection.

"THE COURT: He may answer.

"A. Or 200 thousand dollars. If that mortgage, he going to get—he going to get that percentage out of it, $9500.

"Q. And did you agree to pay him anything for getting a mortgage loan, if he wasn't successful in getting it?

"A. Nothing. Nothing. That is what was the agreement right between us.

"MR. ARNOLD LEVIN: That is all."

It is clear from the record, therefore, that the note, if indeed there was such a note, which the defendants admitted signing, was to be evidence of a debt for services for procuring a loan which was not procured and for which the plaintiff in this action makes no claim. It is also clear that the subject of the allegations in both the answer and affidavits herein referred to are concerned with the matter of procuring a loan and not other legal services. These allegations are not concerned with the note upon which judgment was taken in this case. The note here under consideration was alleged to have been given for professional services and the only denial that there was a contract for such services is the testimony of the defendant, above set out, confined in point of time to December 10, 1954, and before, while the note here in controversy is dated January 6, 1955, and the contract about which it is claimed the services were performed between the defendants, as owners, and The Yates Construction Company to complete the recreation center, is dated January 7, 1955. A note presupposes consideration until an affirmative defense, such as payment or fraud, is presented. In attempting to vacate a judgment under such circumstances what needs to be shown is prima facie proof supporting the defense. But the defense which is presented here is that the note is a forgery upon which the defendants are not bound. Either such claim is true or is not true. The same proof is required on the motion as on the merits. It must follow, therefore, that even though the rule be as just stated, a trial judge is not required in all events to give credence to the incredible in determining the issue on the motion.

In the case of **Alliance First National Bank v. Spies, 158 Oh St 499**, 110 N. E. (2d) 483, the court, in effect, held that on the trial of a motion to vacate a judgment after term, a court may disbelieve the testimony of an interested party. It is clear that is exactly what happened in this case on the trial of defendants' motion to vacate a judgment after term on authority of §2325.01 et seq, R. C. The court must have found that there was no credible evidence that the signatures of the defendants on the note in question were forged. This being so, there was, therefore, no other question presented, and the facts, as determined by the court, required that the petition to vacate the judgment be denied. The judgment, is, therefore, affirmed. Exceptions noted.

HURD, and KOVACHY, JJ, concur.