## SUZANNE LESLIE ZAHRINGER, Appellant, *v.* MICHAEL ZAHRINGER, Respondent.

No. 4212

January 12, 1960 348 P.2d 161

*Gray and Young,* of Reno, for Appellant.

*Grubic, Drendel and Bradley,* of Reno, for Respondent.

## OPINION

By the Court, PIKE, J.:

Appeal from those provisions of a divorce decree awarding certain corporate stock to respondent.

The appellant will hereinafter be referred to as the "wife" and the respondent as the "husband."

The parties were married in this state on June 17, 1954, and resided here during their marriage which was terminated by a divorce granted to the wife on January 9, 1959, on the ground of extreme cruelty. The decree divided certain property between the parties. The wife appeals from that part of the judgment which awarded some 30 shares of Firestone corporate stock to the husband.

The written decision of the trial judge, as well as the findings of fact, conclusions of law, and decree all disclose that the basis of such award of the stock was the court's finding that the stock was the separate property of the husband.[1] This conclusion was based upon the court's finding that, although all of the Firestone stock had been purchased by the husband during coverture, such purchases were made either with (a) funds owned by the husband prior to marriage, or (b) borrowed from his parents on the husband's own credit. It likewise appears from the record that the trial court in making the award had in mind the decision in Thorne v. Thorne, 74 Nev. 211, 326 P.2d 729, 730, where this court held, "The statutory power of the court to make equitable disposition of the property owned by the parties is, under NRS 125.150, limited to community property. The only power of the court over the husband's separate property is to set aside such portion for the wife's support as shall be deemed just and equitable."[2] In the instant case there was no child of the marriage and no support was ordered

---

[1] NRS 123.130, subd. 2: "All property of the husband owned by him before marriage, and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, is his separate property."

[2] NRS 125.150, subds. 1 and 2: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.

"The court may also set apart such portion of the husband's property for the wife's support and the support of their children as shall be deemed just and equitable."

paid to the wife. Accordingly, under the governing authorities just referred to, the trial court, if properly finding that such stock was the separate property of the husband did not have power to distribute the corporate stock to other than the husband.

The husband testified that in May 1956 he borrowed $3,900 from his parents with which he purchased some 20 or 25 shares of stock, and that in January 1957 he borrowed another $1,000 from them with which he purchased an additional five shares of stock. He took title to the stock in his own name and, so far as appears from the record, retained possession and control of it, except for an undisclosed number of shares pledged to his parents as security for the payment of the loans which they had made to him. Such pledge was in effect at the time of the trial. He also testified that, on the occasion of each loan he gave his parents his promissory note evidencing the indebtedness, but that no payment had ever been made on either note, and that he still owed his parents the money borrowed from them. No such promissory note was ever offered in evidence or otherwise brought to the attention of the court except by the husband's testimony just referred to. Neither of the parents gave any testimony at the trial. No written documents or records were offered to substantiate the husband's contention. The husband testified that he did not know the value of the stock at the time of the trial, limiting himself to saying he "imagined" that it had not decreased in value since he had purchased it. He did not state the exact number of shares purchased, but the total number of shares appears to have been either 25 or 30. Although the wife testified that during the marriage period she and the husband had discussed the possible purchase of Firestone stock, there is no evidence that she had knowledge of any of the details attendant upon either the purchases or the borrowing of the money used to make the purchases by her husband. However, her testimony shows that she had knowledge that he had acquired the stock after he had done so, and discussed its probable value with him.

The husband testified that at the time of his marriage, his separate property, so far as either cash in his possession or deposit credits were concerned, consisted of the following: About $1,200 in a Reno bank, about $12,300 in two Detroit, Michigan accounts and a "few hundred dollars" additional in his possession. The $1,200 was placed in a joint account with his wife after their marriage on June 17, 1954. About January 1955 he and his wife purchased a parcel of unimproved real estate for the purpose of constructing a home upon it. He testified that he made a down payment of $1,000 from the $1,200 on deposit in the Reno bank, followed by a $5,000 payment drawn by him from his Detroit accounts. With reference to a $7,371.28 check received by him from his Detroit accounts, he testified that he deposited $4,000 of its proceeds in the joint account of his wife and himself and carried the other some $3,000 in his wallet, making payments from it covering labor, materials and other construction expenses until it had all been expended within a period of about a year. The testimony of a bank official, substantiated by bank records, corroborated the deposit of $4,000 of the proceeds into the joint account. However, the same testimony and the same records likewise showed that at that time he purchased another cashier's check for $3,525, causing H. J. Brandenberg to be named as payee. He paid for both checks with the $7,371.28 check and sufficient cash to equal the cost of the two checks. He denied having used the portion not deposited in the joint bank account to purchase the Firestone stock, but persisted in his statement that he had bought such stock with funds borrowed from his parents. This last mentioned testimony on the part of the husband cannot be reconciled with the circumstances surrounding the said cashier's check for $3,525 that was issued to H. J. Brandenberg, which discloses that it was within a few days thereafter endorsed by such payee to the Firestone Company and negotiated or deposited by it in a Los Angeles bank.

At the trial the parties stipulated that a total of $10,052.62 of the husband's funds constituting separate

property had been deposited in the joint bank account between January 3, 1956 and July 20, 1956. The testimony in the case shows that $9,000 of this total came from the Detroit accounts owned by the husband before marriage.

The proceeds of the loans received by the husband from his parents must be presumed to be community property. Jones v. Edwards, 49 Nev. 299, 245 P. 292. Likewise when the husband purchased stock with the borrowed funds, the stock was presumed to be community property. Lake v. Bender, 18 Nev. 361, 384, 4 P. 711, 7 P. 74. The fact that the stock was issued only in the name of the husband did not affect the presumption that it was community property. Milisich v. Hillhouse, 48 Nev. 166, 228 P. 307.

With the above outlined evidence before it, the trial court was required to determine whether or not such evidence was sufficient to rebut the presumption that the Firestone stock purchased by the husband during coverture was community property. There was no testimony before the court refuting that of the husband that he had purchased the stock with funds borrowed by him from his parents and to whom he had pledged some of the stock at least as security for repayment of the loans. There was, however, the $3,525 cashier's check payable to Brandenberg and endorsed by him to the Firestone Company. This check was purchased with separate funds of the husband and, while there is no conclusive evidence that this particular check was used to buy Firestone stock, there is certainly nothing in the record indicating why the funds were paid to the Firestone Company unless it was in connection with the stock purchases testified to by the husband.

There was evidence before the trial court that at the time that the stock purchases were made, the husband had separate property funds available to make such purchases. There was also evidence that such funds had been so used, despite the husband's testimony to the

contrary. Whether or not the evidence was clear and convincing and sufficient to overcome the presumption that the stock acquired during coverture was community property, was a question for the trial court and, under the particular evidence of this case, we consider there was substantial evidence in support of the trial court's finding and the portion of the judgment appealed from. In Re Pepper's Estate, 158 Cal. 619, 112 P. 62, 63, 31 L.R.A. (n.s.) 1092.

Judgment affirmed, with costs to respondent.

McNAMEE, C. J., and BADT, J., concur.