WILSON, APPELLEE, *v.* WILSON, APPELLANT.

[Cite as Wilson v. Wilson, 14 Ohio App. 2d 148.]

(No. 28532—Decided May 23, 1968.)

*Messrs. Rollins & Mosesson,* for appellee.
*Messrs. Lavelle & Lavelle,* for appellant.

CORRIGAN, C. J. We have before us for consideration on questions of law an appeal from a judgment of the Court of Common Pleas of Cuyahoga County overruling a motion to vacate a divorce decree.

The plaintiff, Clarence C. Wilson, Jr., a member of the Armed Forces of the United States, filed his petition for divorce on November 1, 1965. Personal service was made on the defendant, Mildred Wilson, on November 23, 1965. The original petition stated that the defendant gave birth to a child which was conceived while the plaintiff was separated from his wife during his tour of duty in Germany as a member of the U. S. Army. No answer was filed, nor appearance made by the defendant, and the divorce was granted on February 10, 1966. Subsequent to the divorce, on March 9, 1966, Clarence Wilson was killed in Viet Nam. On March 29, 1966, defendant filed the motion to vacate, which was overruled by the Court of Common Pleas on March 22, 1967. This appeal followed. Appellant urges four assignments of error as follows:

"1. Said uncontested divorce decree was obtained contrary to and in disregard of the Ohio Revised Code Section 3105.08.

"2. The court erred in failing to exercise its inherent powers to vacate the divorce decree during term of court for the fraud perpetrated upon the court and the appellant.

"3. The court erred in failing to vacate the decree of

divorce where there was no corroborating testimony and there was condonation by the parties during the pendency of suit.

"4. The court erred in granting a divorce without making a provision for the support and welfare of the minor child involved. Doctrine of '*in loco parentis.*'"

In assignment of error number one appellant contends that the trial court erred in granting a divorce without first causing a mandatory investigation to be made as called for under Section 3105.08, Revised Code.

Section 3105.08, Revised Code, reads as follows:

"On the filing of a petition for divorce * * * or for alimony, the Court of Common Pleas may, and in cases in which there are children under fourteen years of age involved shall, cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action. The report of such investigation shall be made available to either party or his counsel of record upon written request not less than five days before trial.

" * * * *."

In the recent case of *Rolls* v. *Rolls* (1967), 9 Ohio St. 2d 59, the Ohio Supreme Court held that an investigation under Section 3105.08, Revised Code, is not a jurisdictional prerequisite to a valid divorce decree. The court agreed that a failure to follow the mandates of Section 3105.08, Revised Code, renders a divorce proceeding voidable but not void. In such a case, the defense of laches becomes important. Laches is a defense to an action to vacate a voidable judgment. 30A American Jurisprudence 197, 658, 743, Judgments, Sections 44, 693, 815. Laches exists in the instant case because of appellant's failure to come forward and assert whatever defenses to the divorce petition she had when she was personally served with process and notified of the divorce suit. Now, after appellee's position has been irrevocably changed, appellant comes forward with this defense urged in claim of error number one. This assignment of error is, accordingly, overruled.

In assignment of error number two, appellant asserts that the trial court erred in not granting the motion to va-

cate in the face of evidence tending to show that appellee had committed a fraud upon the trial court. Appellant contends that the failure of the plaintiff, appellee herein, to make a full disclosure of his continuing relationship with his wife and her child constituted a fraud upon the court. Fraud perpetrated upon a court, of course, is not only a valid common-law ground for vacating a judgment during term, but also a statutory ground. See Section 2325.01 (D), Revised Code; *First National Bank of Dunkirk* v. *Smith* (1921), 102 Ohio St. 120; *Edge* v. *Stuckey* (1931), 40 Ohio App. 122; *Jelm* v. *Jelm* (1951), 155 Ohio St. 226. In either case, the evidence of fraud must be clear and convincing. See *In the Matter of Veselich* (1926), 22 Ohio App. 528. In *Jelm* v. *Jelm, supra,* for example, it was established on the motion to vacate that Mrs. Jelm, when she won an uncontested divorce from her husband, had failed to tell the trial judge that she had been living with her husband continuously since the institution of the divorce; that a fourth child was conceived during that period; and that she had no intention ceasing to cohabit with him. Such facts, the court concluded, constituted fraud. In this case, however, even though there is some evidence that appellee condoned his wife's transgressions and that he stood *in loco parentis* to the minor child, one cannot automatically assume that he committed a fraud upon the trial court. The only record available to our court concerns testimony taken on the motion to vacate. The record does not show what was revealed to or concealed from the trial judge. A similar situation was encountered in *Dreitzler* v. *Dreitzler* (1961), 115 Ohio App. 231, where an ex-wife, after an uncontested divorce was granted against her, filed a motion to vacate on grounds of fraud and collusion. On overruling the motion to vacate, the lower court held that it could find no evidence of fraud or collusion. The Court of Appeals affirmed, saying:

"The bill of exceptions filed in this case contains only testimony taken on the hearing of the motion. It does not contain any of the testimony taken at the hearing on the divorce petition. * * *

"* * *.

"Without having the benefit of the testimony of the divorce hearing before us, we can only presume the regularity of the divorce proceeding in granting custody and denying approval of the separation agreement. * * *
"* * *

"A reviewing court will not reverse the judgment of a trial court overruling a motion filed during term to vacate and set aside a default judgment, in the absence of an abuse of discretion. * * *
"* * *

"In the review of the motion to vacate, it must be remembered that the trial judge, in the determination of the facts, has the opportunity to observe the demeanor and conduct of the witnesses and should be allowed a wide latitude of discretion."

In Ohio it is well established that the power of a trial court to vacate or modify its own judgments during term is in the exercise of its sound discretion and appealable only for an abuse of such discretion. See *First National Bank of Dunkirk* v. *Smith* (1921), 102 Ohio St. 120; *Kramer Realty Co.* v. *Glander* (1943), 41 Ohio Law Abs. 389; *Farley* v. *Pickett* (1964), 177 Ohio St. 133. Without clear proof that appellee committed a fraud on the trial court, and particularly in view of the strong evidence of laches on appellant's part, we cannot find that the court abused its discretion in refusing to vacate the divorce decree.

Appellant also cites Section 2325.01 (G), Revised Code, in assignment of error number two as a ground for reversal.

Section 2325.01, Revised Code, reads in part:

"The Court of Common Pleas or the Court of Appeals may vacate or modify its own final order, judgment, or decree after the term at which it was made:
"* * *

"(G) For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;
"* * *"

Appellant argues that the failure of her original attorney to file a simple answer amounted to an unavoidable casualty or misfortune. The recent case of *Andring* v. *And-*

*ring* (1965), 3 Ohio App. 2d 417, cited by appellant, holds that a lawyer's negligence can qualify as grounds to vacate judgment under Section 2325.01 (G), Revised Code. In that case, however, a detailed account of the lawyer's negligence was available to the court and relied upon by it. In the instant case, the appellant asserts that the attorney was negligent, but does not furnish any evidence to support this contention.

In assignment of error number three, appellant registers two complaints. She first asserts that there was no testimony to corroborate plaintiff's grounds for divorce, and she then argues that there is strong evidence of condonation of defendant's transgressions, if any, by the plaintiff, appellee here. The first argument appears to have no merit. It is based upon Section 3105.11, Revised Code, which provides that "A judgment for divorce, annulment, or for alimony shall not be granted upon the testimony or admissions of a party unsupported by other evidence." At least one case in Ohio has held that the admissions of a defendant on direct and cross-examination are sufficient to supply the corroborative evidence called for in Section 3105.11, Revised Code. See *Wiley* v. *Wiley* (1957), 78 Ohio Law Abs. 597. Appellant admitted her adultery. In addition, the record contains other evidence in corroboration of appellant's admission.

The condonation question is more complicated. Condonation is generally defined as a voluntary forgiveness of a matrimonial offense by an aggrieved spouse. See *Rousey* v. *Rousey* (1929), 7 Ohio Law Abs. 467. The legal effect of condonation is to prevent a marital wrong or injury from being used later as a ground for divorce, and, if the condonation occurs while a suit for divorce is pending, the cause of action is destroyed. See *Mears* v. *Mears* (1945), 42 Ohio Law Abs. 346. Admittedly, the record contains evidence that Pfc. Wilson condoned his wife's transgressions. On the other hand, there is also some evidence that he never condoned her conduct. From reading the record, one gets the impression that the parties never had a permanent home together. The only items of evidence offered by appellant to the contrary are her own

statements, and a trial court is not compelled to believe the testimony of an interested party on a motion to vacate. See *Livingstone* v. *Rebman* (App., 1958), 77 Ohio Law Abs. 349. More important, however, is the ever-present question of laches. Assuming that appellant does have a valid defense, and that Pfc. Wilson fully condoned his wife's conduct, there is no excuse for appellant not appearing at the original trial with this defense. In such case, Pfc. Wilson could have presented his version. Now he cannot be heard.

In *Kramer Realty Co.* v. *Glander* (1943), 41 Ohio Law Abs. 389, the defense of laches was employed to overrule a motion to set aside a default judgment in an action for forcible detainer. The court says, at page 393:

"The second ground is that the defendant has a good and valid defense. It is doubtful if in the evidence of the defendant there is support for this claim, but, if so, there is no showing whatever that he was precluded from setting this defense up at the time of the original trial. Unless and until this appears there is no sound basis for opening up the judgment.

"The motion to open up the judgment coming during term, the action of the court in refusing to vacate may not be set aside except for abuse of discretion, which is not charged and there is nothing to indicate such abuse."

The third claim of error is overruled.

In assignment of error number four, as in assignment of error number three, the question of laches is again apparent, *i. e.*, assuming that Pfc. Wilson did stand *in loco parentis* to his wife's son, why did she not come forward with this evidence at the proper time? Other reasons, however, also exist for overruling this assignment of error.

The clearest evidence of consent to stand *in loco parentis* occurs when a person takes a child not his own into his custody as a member of his own family. 41 Ohio Jurisprudence 2d 308, Parent and Child, Section 5; 39 American Jurisprudence 697, Parent and Child, Section 61. Also, as argued by appellant in her brief, cases have held that a man who married a woman knowing her to be pregnant by another and remained married to her after the

child was born was liable for the support of the child under the doctrine of *in loco parentis*. See *Miller* v. *Anderson* (1885), 43 Ohio St. 473, 54 Am. St. Rep. 823; *Gustin* v. *Gustin* (1958), 108 Ohio App. 171. The recent case of *Belk* v. *Belk* (1968), 13 Ohio App. 2d 212, however, casts doubt on the rule as being applicable in every case.

In *Belk*, the wife lived with her husband only one month after their marriage, and the court declined to apply the rule in the *Miller case*. The court said:

"* * * It must be kept in mind that the child in this case was not born in true wedlock. True, it was born while the appellant and appellee were still married, or, to put it another way, the divorce had not as yet been granted. They only lived together four weeks when the wife left her husband without cause, never to return."

Perhaps it is significant in the case at bar that the parties apparently lived together for some time after the birth of the child. Still, the record is vague concerning this period of time.

Again, as in the fraud question, this reviewing court is asked to assume that this evidence of *in loco parentis* was never brought before the trial judge during the original divorce hearing. Yet, without the record of the original hearing, we can only presume the regularity of that proceeding. See *Dreitzler* v. *Dreitzler* (1961), 115 Ohio App. 231. Also, on the motion to vacate, only a clear showing to the contrary will overturn a presumption that the trial judge exercised his sound discretion correctly in reviewing the evidence. See *Casey* v. *Ohio State Nurses Assn.* (1951), 65 Ohio Law Abs. 411. Finally, as argued by appellee in his brief, the determination of the trial court that Pfc. Wilson was not the father of the child does not preclude the child in a separate action from reopening the issue. See Section 3105.13, Revised Code; *Schlenker* v. *Ferdon* (1926), 21 Ohio App. 222.

For the reasons stated, the judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

SILBERT and ARTL, JJ., concur.