PETOR STOJANOVICH, Appellant, v. BARBARA A. STOJANOVICH, Respondent.

No. 6141

November 25, 1970          476 P.2d 950

*Denton & Monsey,* of Las Vegas, for Appellant.

*Harry E. Claiborne* and *James J. Brown,* of Las Vegas, for Respondent.

## OPINION

By the Court, Collins, C. J.:

This is an appeal from a judgment and decree of divorce by appellant husband (defendant and counterclaimant below) in favor of respondent wife (plaintiff and counterdefendant below). The lower court awarded the wife a decree of divorce, custody of two children, ordered the husband to pay child support (but not alimony) and adjudicated the property rights and interests of the parties. The only issue before us has to do with the judgment of the lower court adjudicating those property rights and whether that court abused its discretion. We feel that it did, and therefore reverse the decision and remand for a limited new trial on that narrow question.

Petor and Barbara were married in Reno in October, 1960. Prior to their marriage, Petor lived in Las Vegas where he worked in the gaming industry. Slightly over four years before the marriage, Petor purchased a home for $15,800 on a long-term contract. The home was furnished when Petor and Barbara took up residence there, but new and additional items of furniture were acquired following their marriage. Prior to the marriage, Petor added improvements to the house valued at approximately $6,500. The home was further improved after the marriage in the approximate value of $10,000. At the time of the trial, the estimated market value of the house was $28,000, but there was still outstanding a first deed of trust of approximately $10,800, leaving an equity of approximately $18,000 to be dealt with. It is that equity and the lower court's ruling thereon which creates the principal issue on appeal.

Other evidence shows that two children, a boy and a girl, were born of the marriage, whose ages at the time of the divorce were 6 and 5, respectively. Barbara was given their custody, with reasonable visitation rights and temporary periods of custody reserved to Petor. Petor was ordered to pay $150 per month for the support and maintenance of each child except when in his temporary custody. No issue arises from that part of the decree.

The evidence further shows that Petor is employed as a pit boss at a gambling casino and was earning at the time of the divorce approximately $21,000 per year. Barbara is employed as a cocktail waitress at a strip hotel, earning wages of approximately $130 per month but receiving considerable "tokes" which make her gross earnings somewhere between $550 per month, as she contended, or $50 to $75 per day as Petor contended. In any event, the court did not grant Barbara alimony.

The court found Petor had treated Barbara with extreme cruelty, both mental and physical, and granted Barbara the divorce and her costs of suit.

The court found the community property of the parties to consist of the following:

(a) Equity in dwelling house located at 1509 East Bonanza, Las Vegas, Nevada.

(b) Furniture, furnishings, appliances, fixtures and household items situated in said dwelling house, except the furniture in Bedroom No. 2.

(c) 1967 Ford automobile.

(d) 1962 Chevrolet Corvair automobile.

(e) 400 shares of the common capital stock of American Silver Company.

(f) 218 shares of Enterprise Fund.

(g) 54 shares of Value Lines.

(h) One declining term policy of life insurance on the life of the Defendant, written with Founders Insurance Company.

(i) One $10,000.00 accidental death policy on the life of the Defendant, written with Combine Insurance Company.

(j) One $10,000.00 life insurance policy on the life of Plaintiff, written with Continental Life Insurance Company.

(k) Joint banking account in the First National Bank of Nevada, Las Vegas, Nevada.

The court also found that stock in the Nancy Lee Mining Co. and the furniture in Bedroom No. 2 were the separate property of Petor.

In dividing the community property of the parties, the court awarded to Barbara the following:

(a) Equity in dwelling house located at 1509 East Bonanza, Las Vegas, Nevada.

(b) Furniture, furnishings, appliances, fixtures and household items situated in said dwelling house, except the furniture in Bedroom No. 2.

(c) 1962 Chevrolet Corvair automobile.

(d) One $10,000.00 life insurance policy on the life of Plaintiff [Barbara], written with Continental Life Insurance Company.

The court awarded Petor, as his share of the community property, the following:

(a) 1967 Ford automobile.

(b) One declining term policy of life insurance on the life of the Defendant [Petor], written with Founders Insurance Company.

(c) One $10,000.00 accidental death policy on the life of the Defendant [Petor], written with Combine Insurance Company.

(d) Joint banking account in the First National Bank of Nevada, Las Vegas, Nevada.

The following items of community property were divided equally between Barbara and Petor:

(a) 400 shares of the common capital stock of American Silver Company.

(b) 218 shares of Enterprise Fund.

(c) 54 shares of Value Lines.

Appellant contends the lower court abused its discretion in its determination the home was community property and in awarding it to Respondent. Appellant also urges the court erred in ruling all the furniture was the community property of the parties and granting it to Respondent.

Respondent, on the other hand, contends that, "The trial court is directed, under the[se] provisions of N.R.S. 125.-150(1), in a divorce, to make 'such disposition of the community property as shall appear just and equitable.' In making such disposition the court is directed to consider the 'respective merits of the parties;' 'the condition in which they will be left by such divorce;' and 'through whom the property was acquired;' 'and the burdens . . . imposed upon it, for the benefit of the children.'

"There was substantial evidence before the court on each of the aforementioned factors, justifying the court's manner of disposition of the community property."

In its preliminary decision from the bench, the trial judge explained his reasons for awarding the home to Barbara as community property in the following way:

"By Mr. Denton: Did you intend that the house be set aside to the wife without compensation to the husband?

"By The Court: I tried to compensate him as I just stated by giving him the entire bank account, $800.00, and the stock. I feel in the house, in case you want my record, that she has lived there the entire length of this marriage and that it would be impossible to split sole and separate property; that her community funds have gone over there since their marriage and they have shared in the improvements and there is no way I could possibly try to split it up this way or that way. I just feel that she has the children and she is the wife and that the home goes to her, that's the end of that, as her sole and separate property."

The issues before us in this appeal are these:

I. Did the lower court violate its discretion in awarding the entire equity of the parties in the home to the wife as community property?

II. Did the court erroneously set aside separate property of the husband to the wife?

1. There is no issue before us whether the trial judge correctly determined the home of the parties to be community rather than separate property. Appellant accepts without objection the lower court's determination the house was community property, and challenges only the award of that community asset between the parties.

2. The clear intent of the lower court's order in dividing the community property of the parties, particularly the home, the stock in the American Silver Company, the shares in the Enterprise Fund, and the stock in Value Lines, was to make

a reasonably equal division. He attempted to equalize the interest given the wife in the home by awarding the husband her interest in the community bank account. That being his purpose, he failed, in our view, accomplishment of it. It is in that determination he overstepped the bounds of his judicial discretion.

3. The lower court was concerned principally with support and proper maintenance of the children, not the wife. So far as the home was concerned and the continuing opportunity of the children to reside in the neighborhood of their birth, among their friends and in familiar surroundings during their minority, that could just as well have been accomplished by imposing a "burden" upon it for the benefit of the children as permitted in NRS 125.150(1),[1] allowing them and the mother to continue to live there during their minority,[2] which does not require vesting sole ownership of the home in the wife. While the lower court is vested with broad discretion in dividing community property, Herzog v. Herzog, 69 Nev. 286, 249 P.2d 533 (1952), there must be a clearly expressed reason in what manner, for what purpose, and for whose benefit that division is made. The general rule announced by this court is, "Equal distribution of the community property appears to be the rule in most cases." Weeks v. Weeks, 75 Nev. 411, at 415, 345 P.2d 228 (1959). Here, the monetary support of the children was assured both by the allowance of $150 per month for each child, as well as the substantial income of the father and the jurisdiction reserved by the trial court to reconsider that amount as the reasonable future needs of the children might indicate.

---

[1]NRS 125.150(1) reads: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children."

[2]We think the trial court might well have entered an order vesting the ownership of the house in the parties jointly, requiring the husband to bear part or even a lion's share of the cost of meeting the monthly mortgage payments, taxes and insurance, imposing a burden on it that the former wife and children be permitted to live there during the children's minority and thereafter ordering the equity divided in some reasonable manner between the parties. There are any number of arrangements which could accomplish that objective.

4. Other items of the husband's separate property were also set aside to the wife.[8] The judgment does not state that the husband's separate property was set aside to the wife for her support or for the support of children (NRS 125.150(3)) nor does the record indicate that a transfer of ownership was needed for that purpose. Accordingly, the court was without power to divest the husband of his separate property. Zahringer v. Zahringer, 76 Nev. 21, 348 P.2d 161 (1960); Thorne v. Thorne, 74 Nev. 211, 326 P.2d 729 (1958); cf. Jacobs v. Jacobs, 83 Nev. 73, 422 P.2d 1005 (1967). That part of the judgment is void.

Accordingly, we reverse the judgment of the lower court vesting sole ownership of the home in the wife, and remand that issue to the lower court for reconsideration in light of the views expressed above.

Reversed and remanded.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[8]The separate property is: (1) All the furniture in bedroom No. 2; (2) three piece sectional couch; (3) drapes in the master bedroom; (4) two dressers; (5) two end tables; (6) dresser in bedroom No. 3; (7) carpets and drapes in bedroom No. 3; (8) power lawn mower; (9) dishes, silverware, china and crystal; (10) miscellaneous hand and power tools.