GLADYS TODKILL, APPELLANT, v. BURTON
A. TODKILL, RESPONDENT.

No. 6446

April 7, 1972 495 P.2d 629

[Rehearing denied May 3, 1972]

*Morton Galane* and *Miriam Shearing,* of Las Vegas, for Appellant.

*Edwin A. Adamson* and *Charles W. Deaner,* of Las Vegas, for Respondent.

## OPINION

By the Court, BATJER, J.:

On October 8, 1970, the district court entered a decree of divorce granting Burton A. Todkill, the respondent, a divorce, finding all property in dispute to be the sole and separate property of respondent, concluding as a matter of law that there was no community property belonging to the parties and awarding Gladys Todkill, the appellant, alimony and attorney fees.

Both parties appear to be satisfied with the termination of the marital relationship, and neither the divorce, the alimony nor attorney fees are an issue in this appeal which is taken only from that portion of the decree designating certain assets to be the separate property of respondent and awarding all of that property to him.

Respondent has been a resident of Nevada since 1948. He and appellant were married in this state in July of 1961. At the time of the marriage appellant was working as a receptionist in a doctor's office in Las Vegas, Nevada, and respondent was managing his automobile agency (Todkill Lincoln-Mercury) in the same city. After the marriage, appellant continued working for only about two months and respondent continued to manage his automobile agency until it was sold in October, 1966. Respondent worked full time at the agency and received approximately $3,000 per month, plus a bonus of an undetermined amount at the end of each year. It is undisputed that in 1944 he inherited $750,000 in stock from his father's estate and that the automobile agency was sold in 1966 for five ($5.00) dollars, plus the assumption by the purchaser of nearly a million dollars in liabilities.

In June of 1962, respondent purchased a lot at 7082 Mira Vista, Sierra Vista Ranchos, Clark County, Nevada for $10,-000. He testified that this money came from the sale of stock

which he inherited from his father. He took title to this property solely in his name. A loan of $42,400 was obtained in July of 1962 for the purpose of constructing a house on the property. This loan was secured by a deed of trust on the property signed by both respondent and appellant. Respondent testified that he borrowed an additional $42,000, secured by his inherited stock, to complete the construction of the home. The house and lot were transferred by deed from respondent to appellant on October 27, 1965. Respondent claims he initiated the transfer to protect the property from creditors, as his business was failing at the time. Appellant denied that there was any conversation regarding "safekeeping" from creditors and testified that the house and lot were a birthday present. (Her birthday is October 28.) After the transfer, respondent continued to pay the taxes and to make all payments on the promissory note secured by the trust deed. Prior to October, 1966, these payments were made from the bank account where he deposited his salary and bonuses. The district court found that the home property had been transferred to appellant to avoid its seizure by respondent's creditors, and that appellant had orally agreed to hold it in trust for respondent and to reconvey it at his request. The district court then went on to find this property to be the sole and separate property of respondent.

In 1962, respondent, with two other persons, formed C. B. C. Inc., for the purpose of purchasing, improving and selling parcels of real estate. The corporation purchased a parcel of land on Paradise Road in Clark County. Respondent testified that he used proceeds from the sale of his inherited stock, plus a bank loan secured by more of the same stock, to purchase his interest in the corporation. Appellant testified that she was not sure where respondent obtained the funds to make this purchase. Stubs in the C. B. C. Inc., stock record book show that a one-sixth interest in the corporation was issued to respondent on November 29, 1965, and a one-sixth interest was, on the same date, issued to appellant. Respondent testified that he could not recall why his wife had been given a one-sixth interest. He did testify, however, that he recalled turning the certificates over to her for the purpose of safekeeping. On January 12, 1966, the stock certificate issued to respondent was transferred by him to appellant. Appellant testified that the transfer was made because respondent wanted her to "have some security," but respondent stated he could not recall why the transfer was made.

The sole asset of C. B. C. Inc., consisting of the Paradise Road property, was sold in June of 1969 for $800,000. Although appellant held in her name a certificate evidencing a one-third interest, respondent personally received $302,-779.74 from the sale. This represented a return of his invested capital plus his share of the profit. The district court awarded the proceeds to respondent and held that the transfer was merely to avoid creditors and that there was an oral agreement to reconvey.

Respondent purchased property at 2000 Las Vegas Boulevard South in 1950. It was at this location that he operated his automobile agency. On November 9, 1962, after his marriage to appellant, he purchased a parcel of property near the agency referred to as the Commerce Street property. Title to this property was taken in the name of Todkill Lincoln-Mercury, Inc. Respondent owned all of the stock in that corporation. The purchase of the Commerce Street property was financed by encumbering that property and the Las Vegas Boulevard South (agency) property with a deed of trust. The payments toward reducing that encumbrance were made by Todkill Lincoln-Mercury, Inc., from 1962 until the agency was sold in 1966.

In May of 1968, the parties discussed the purchase of a lot adjoining the 7082 Mira Vista property. Respondent admitted that he was short on cash and testified that he told appellant she would have to get the $750 for the down payment. Appellant did consummate the transaction, and she put the property in her name. Respondent alleged that appellant used his money to make the purchase, but appellant claimed that she made all payments and paid all taxes with her own money which respondent had given her "for security." The district court found this lot to be the sole and separate property of respondent.

Appellant contends that the district court erred in finding no community property belonging to the parties, but instead finding all property purchased by the parties during the marriage to be the sole and separate property of respondent and holding that the property conveyed by respondent to appellant during marriage was held by her in trust for him.

It is undisputed that the home property at 7082 Mira Vista, the C. B. C. Inc., stock, the Sierra Vista lot adjoining the home property and the Commerce Street property were acquired during the marriage. Properties acquired during marriage are

presumed to be community property,[1] and the presumption can only be overcome by clear and certain proof. Carlson v. McCall, 70 Nev. 437, 271 P.2d 1002 (1954); Lake v. Bender, 18 Nev. 361, 7 P. 74 (1884).

In adjudicating marital rights we have previously held that if there is substantial evidence to support the lower court's findings we will not reverse that determination upon appeal. Shane v. Shane, 84 Nev. 20, 435 P.2d 753 (1968); Zahringer v. Zahringer, 76 Nev. 21, 348 P.2d 161 (1960); Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950). Likewise, when adjudicating marital property rights, if there is clear and convincing evidence to support a lower court's finding that property purchased during marriage is separate property we will not reverse that determination on appeal. Kelly v. Kelly, 86 Nev. 301, 468 P.2d 359 (1970).

Here we will not disturb the district court's determination that property acquired by the Todkills during marriage, regardless of how title was held, was the husband's separate property. The district court correctly found that under NRS 123.130 those assets were the separate property of respondent. Whether or not the evidence was clear and convincing and sufficient to overcome the presumption that the property acquired during marriage was community property was a question for the district court. The evidence offered by the respondent, together with the reasonable inferences to be drawn therefrom, can be deemed clear and convincing. On the other hand, appellant failed to offer clear and convincing proof that the purchases were made with community funds or credit or acquired by the respondent's community toil or talent. Kelly v. Kelly, supra; Barrett v. Franke, 46 Nev. 170, 208 P. 435 (1922).

Shortly after the marriage appellant terminated her employment and thereafter made no contribution of wages or property to the community. At the time of the marriage she owned some

---

[1]NRS 123.130: "1. All property of the wife owned by her before marriage, and that acquired by her afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, is her separate property.

"2. All property of the husband owned by him before marriage, and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, is his separate property."

NRS 123.220: "All property other than that stated in NRS 123.130, acquired after marriage by either husband or wife, or both, except as provided in NRS 123.180 and 123.190, is community property."

separate property but it is in no way involved in this case. The only community property generated and received by the parties during the marriage was respondent's salary of $3,000 per month, together with undetermined bonuses from Todkill Lincoln-Mercury, Inc., which business enterprise respondent had purchased prior to the marriage with money from his father's estate. The salary and bonuses were received by respondent until the agency was sold in October, 1966. There is substantial evidence that the salary and bonuses were used to defray family living expenses and clear and convincing evidence to show that any of the salary and bonuses were used to purchase the disputed property is absent. Kelly v. Kelly, supra.

However, it is undisputed that during the marriage respondent transferred his one-sixth interest in the C. B. C. Inc., stock and all of his interest in the property at 7082 Mira Vista to appellant. The district court found that these transfers were prompted by a desire on the part of respondent to avoid seizure by his creditors and that there was an oral agreement between the parties that appellant would hold the property in trust for respondent and would re-transfer it to him at his request. Appellant contends that this was error on the part of the trial court, and we agree.

In his complaint, respondent alleged that appellant was holding the real property at 7082 Mira Vista, Sierra Vista Ranchos, Clark County, Nevada, as constructive trustee for the benefit of respondent. In Moore v. DeBernardi, 47 Nev. 33, 50, 220 P. 544 (1923), this court said: "It is well settled that a constructive trust cannot be established by a mere preponderance of the evidence, but must be established by evidence which is clear, definite, unequivocal, and satisfactory." We find no clear, definite, unequivocal and satisfactory evidence in the record to support the finding of such a trust. There was no trust relationship created by or in connection with the deed of the real property located at 7082 Mira Vista (home property), and it did not become the duty of appellant to reconvey that property to respondent under the terms of any trust.

When a husband transfers title to his separate property from his name into his wife's name, he is presumed to intend a gift to her, even though his original intent was to defraud creditors. Peardon v. Peardon, 65 Nev. 717, 201 P.2d 309 (1948); cf. Peterson v. Brown, 17 Nev. 172, 30 P. 697 (1882). That presumption, while rebuttable, can be overcome only by clear and

convincing evidence. The husband has the burden of proof. If the evidence is conflicting the presumption remains. Here, in spite of the testimony of respondent that his transfer of the home and one-sixth of the C. B. C. Inc., stock to the appellant was in trust, she has, through her testimony, raised the issue that the home was a birthday present and that the stock was given to her for her financial security. This raises a conflict in the evidence and the respondent's evidence is therefore not so clear and convincing as to rebut the presumption of an absolute gift. Peardon v. Peardon, supra.

Respondent testified that he had no recollection why he transferred his interest in his C. B. C. Inc., stock to appellant.[2] On the other hand, appellant unequivocally testified that respondent transferred his stock to her because he wanted her to have security.[3] There is some evidence to support the finding of the trial court that the transfers were prompted by respondent's desire to avoid seizure of the properties by his creditors, but this intention on the part of respondent does not overcome the presumption of an absolute gift to the wife. See Weeks v. Weeks, 72 Nev. 268, 302 P.2d 750 (1956).

Just as the findings of the trial court will be sustained on the appellate level if they are supported by substantial evidence, Shane v. Shane, supra; Zahringer v. Zahringer, supra; and Ormachea v. Ormachea, supra, they will be reversed if they are not. Roberts Roof & Floor v. Ford Wholesale, 84 Nev. 298, 440 P.2d 124 (1968); Peardon v. Peardon, supra. Likewise, the finding of a trial court that a husband's transfer of his separate property to his wife during marriage is not a gift will be sustained on the appellate level if it is supported by clear and convincing evidence, but it will be reversed if it is not.

The evidence introduced by the respondent was not clear and convincing. It did not overcome the presumption of a gift

---

[2]The respondent's testimony was as follows:

"Q. I note on the back of Exhibit, defendant's Exhibit F, there is an endorsement signed by you and dated January 12, 1966. Do you recall endorsing that certificate?

"A. I do not recall it. It's got my signature.

"Q. Do you recall why that was endorsed?

"A. I sure don't."

[3]The appellant's testimony was as follows: "A. He [respondent] said that he wanted me to have this. He said, 'I want you to have this.' He said, 'I have said many times I wanted you to have security. This is yours.' And he signed his portion over to me."

from him to the appellant of the real property at 7082 Mira Vista and the one-sixth interest in C. B. C. Inc.

We reverse that part of the decree of divorce holding: "That any title which defendant holds in the following described properties is held in trust for the Plaintiff to-wit: "a. A house and real property located at 7082 Mira Vista and adjoining lot described as:

"Lots 7 and 8, Block 2, Sierra Vista Ranchos, Unit #1, as shown by map thereof on file in Book of Plats, Page 54, in the office of the Clark County, Nevada, recorder.

"b. Capital stock in C. B. C. Inc., a Nevada corporation, now reduced to cash pursuant to a liquidation arising out of the sale of corporation assets, now on deposit in Nevada State Bank.

"That this decree in accordance with NRCP 70 shall have the effect and operation at law and in equity of vesting title to the aforesaid real and personal property in the Plaintiff, BURTON A. TODKILL, as fully as if Defendant, by Deed of Conveyance and/or Bill of Sale, had transferred the same to him in fee simple. That Defendant and all persons claiming from, through and under her (other than Plaintiff) be and they are hereby forever barred from asserting any right, title, or interest in any of the aforesaid described properties, real and personal, or any part thereof except as provided below."

The case is remanded to the district court with instructions to enter an amended decree of divorce confirming the appellant's right, title and interest as her sole and separate property to the house and real property located at 7082 Mira Vista, Sierra Vista Ranchos, Clark County, Nevada, and to confirm and allow to her and require to be paid to her by the respondent the sum of $151,389.87, plus accumulated interest from October 8, 1970, the same being one-half of the proceeds received by respondent from the sale of the assets of C. B. C. Inc.

The district court is further instructed to confirm to the respondent all right, title and interest in and to the lot adjacent to the property located at 7082 Mira Vista referred to as the Sierra Vista lot, and to require the appellant to quit claim to the respondent the title thereto.

The amended decree of divorce shall in all particulars conform to the holdings reflected in this opinion.

In all other particulars the decree of divorce entered on October 8, 1970 by the district court in Case No. A62980,

Burton A. Todkill, plaintiff, vs. Gladys Todkill, defendant, is hereby affirmed.

Zenoff, C. J., and Mowbray, Thompson, and Gunderson, JJ., concur.