HARRY H. SARGEANT, APPELLANT AND CROSS–RESPONDENT, v. MATILDA E. SARGEANT, RESPONDENT AND CROSS–APPELLANT.

No. 6567

April 7, 1972                                    495 P.2d 618

[Rehearing denied May 3, 1972]

*Gene Barbagelata,* of Reno, and *Peter Echeverria,* of Reno, for Appellant and Cross-Respondent.

*Johnson and Sloan,* of Reno, and *John J. Hurtak* and *Norman K. Rutkin,* of Miami, Florida, for Respondent and Cross-Appellant.

## OPINION

By the Court, ZENOFF, C. J.:

The parties to this appeal were married September 25, 1940 and resided in Florida for the majority of their married life.

The day before the marriage the parties voluntarily executed an antenuptial agreement whereby they agreed that their separate property would remain separate. It must be noted that it is apparent from the record that Matilda Sargeant was not aware nor permitted to be aware of the agreement's significance. At the time of the marriage Harry Sargeant was worth $285,000, but at the time of the divorce his net worth was $3,000,000. He managed all financial affairs during the marriage and made allowances to her sufficient for their food, clothing and housing and for the care of a child whom they brought into their home.

Marital difficulties began in 1960 and continued for approximately eight years when he, surprisingly to her, commenced divorce proceedings in Nevada. He was 81 years of age at the time. After an extensive contest the trial court granted her the divorce as the party least at fault, gave her a lump sum support and maintenance award of $331,200 payable in nine installments, awarded the wife's counsel $47,500, plus $5,000 preliminary fees, and ordered the creation of a $50,000 trust fund for the benefit of the foster child, Michael Estes, for his education and support.

The husband contests the awarding of attorneys' fees, traveling expenses and costs when it was not shown that the wife was in necessitous circumstances, that the $52,500 attorneys' fees to her were excessive, that the preliminary alimony of $400 per month, coupled with residence privileges for herself and Michael was error, and also that the lump sum award of alimony and the trust for Michael were invalid.

1. The trial court awarded Matilda's counsel $5,000 preliminary attorneys' fees, plus $47,500 at the conclusion of the suit for a total of $52,500, which Harry claims the court had no right to give and which were, in any event, excessive. Keeping in mind that he was worth $3,000,000 at the time of the divorce, her "meager savings," as described by the trial court, consisted of stock worth $42,000, from which she received annual dividends of $1,700 and savings and checking accounts totaling $2,200.

Our historical standard of measuring preliminary and final allowances was stated in Allis v. Allis, 81 Nev. 653, 408 P.2d 916 (1965), wherein we said the husband's greater wealth is not relevant to the issue of the wife's need of money to pay her counsel fee, but that the wife must show necessitous circumstances to authorize such an award. See also Cranmer v. Cranmer, 79 Nev. 128, 379 P.2d 474 (1963). The term "necessitous circumstances" does not appear in Nevada's suit

money statute, NRS 125.040,[1] nevertheless, this court for many years has written in that requirement. However, when we hue to the strict letter of "necessitous circumstances" we are out of step with the majority of the nation's community. Cf. Jolley v. Jolley, 363 P.2d 1020 (Idaho 1961); Cudahy v. Cudahy, 258 N.W. 168 (Wis. 1935); Stuber v. Stuber, 244 P.2d 650 (Utah 1952); Sweeley v. Sweeley, 170 P.2d 469 (Cal. 1946); Gregg v. Gregg, 272 S.W.2d 855 (Mo. 1954); Sigesmund v. Sigesmund, 115 Cal.App.2d 628, 252 P.2d 713 (1953); Bell v. Bell, 328 P.2d 115 (Mont. 1958); Schmidt v. Schmidt, 321 P.2d 895 (Wash. 1958); Small v. Small, 485 P.2d 1365 (Kan. 1971); Lowe v. Lowe, 182 S.E.2d 75 (S.C. 1971); Swanson v. Swanson, 464 S.W.2d 225 (Mo. 1971); Smith v. Smith, 474 P.2d 619 (Colo. 1970). According great respect to the trial court's discretion we now declare Allis v. Allis, supra, overruled and all cases therein cited as to the pertinent point now discussed are likewise overruled. The wife must be afforded her day in court without destroying her financial position. This would imply that she should be able to meet her adversary in the courtroom on an equal basis. Here, without the court's assistance, the wife would have had to liquidate her savings and jeopardize the child's and her future subsistence still without gaining parity with her husband.

Neither is the final amount excessive for the total hours expended by her attorneys numbered 753, plus court appearances, conferences, depositions and the review of many exhibits and records spanning a 29-year period. The amount of counsel fees is within the court's discretion, Fox v. Fox, 81 Nev. 186, 198, 401 P.2d 53 (1965), and we will not say in view of all of the circumstances that the court abused its discretion in making the award or in the amount. Sigesmund v. Sigesmund, supra.

[1]NRS 125.040: *"Allowances and suit money for wife during pendency of action.* In any suit for divorce now pending, or which may hereafter be commenced, the court, or judge, may, in its discretion, upon application, of which due notice shall have been given to the attorney for the husband if he has an attorney, or to the husband if he has no attorney, at any time after the filing of the complaint, require the husband to pay such sums as may be necessary to enable the wife to carry on or defend such suit, and for her support and for the support of the children of the parties during the pendency of such suit. A court or judge may direct the application of specific property of the husband to such object, and may also direct the payment to the wife for such purpose of any sum or sums that may be due and owing the husband from any quarter, and may enforce all orders made in this behalf as provided in NRS 125.060."

2. A second point of major proportion is appellant's objection to payment of alimony in a lump sum instead of periodic installments.

NRS 125.150(4) provides: "In the event of the death of either party or the subsequent remarriage of the wife, all alimony awarded by the decree shall cease unless it has otherwise been ordered by the court." Presumably, an alimony award payable in installments can be ordered a charge against the estate of the husband in order that her subsistence be insured in the event of his death or his voluntary dissolution of his assets in recrimination against her.

In justifying the lump sum award the trial court found that "It is conceivable the plaintiff could die within a short period of time; that the overall attitude and conduct of this plaintiff illustrates some possibility that he might attempt to liquidate, interfere, hypothecate or give away his assets to avoid payment of any alimony or support obligations to defendant. Under the plaintiff's view that the defendant never was nor now is entitled to any consideration it is foreseeable that there may be further litigation on modification of any alimony or support award the court may make because of change of circumstances; that defendant intends to remain a resident of Florida, and if the Nevada courts retain jurisdiction, such litigation would be expensive to the defendant and that it would be most advantageous to the parties to settle differences on alimony with finality."

The husband's life expectancy was 4.9 years, the wife's life expectancy was 23.1 years. The trial court awarded the alimony on the basis of $1,200 per month or $14,337.66 per year multiplied by her life expectancy, totaling $331,100, having taken into consideration factors including her age, health, length of marriage, standard of living, assets of each party, health insurance policies, ownership of furnishings, earning capacity of each party and conduct of the parties.

This court has previously approved lump sum alimony awards. Fenkell v. Fenkell, 86 Nev. 397, 469 P.2d 701 (1970); Winn v. Winn, 86 Nev. 18, 467 P.2d 601 (1970); Shane v. Shane, 84 Nev. 20, 435 P.2d 753 (1968); see also Reeves v. Reeves, 399 S.W.2d 641 (Mo.App. 1966); Udell v. Udell, 151 So.2d 863 (Fla.App. 1963); Broida v. Broida, 388 S.W.2d 617 (Ky. 1965); cf. Cruikshank v. Cruikshank, 121 P.2d 25, 27 (Cal.App. 1942).

The dour attitude of the aged husband to his wife 20 years his junior, despite her many years of care and affection before they were married and after, together with the potential problems (she lives in Florida) which would attend the possible litigious harassment via the Nevada courts justify the trial court's exercise of discretion that we will not disturb. The finding of fault by the trial court predominated against the husband, the voluminous testimony and evidence weighed in her favor. His bitterness foretells future harassment.[2]

Under NRS 125.150(3) the court may set apart the husband's separate property for the wife's support when the need is shown (Lewis v. Lewis, 71 Nev. 301, 289 P.2d 414 (1955); Jacobs v. Jacobs, 83 Nev. 73, 422 P.2d 1005 (1967)) and an order for support is present. Zahringer v. Zahringer, 76 Nev. 21, 348 P.2d 161 (1960); Thorne v. Thorne, 74 Nev. 211, 326 P.2d 729 (1958); Stojanovich v. Stojanovich, 86 Nev. 789, 476 P.2d 950 (1950). It is apparent to this court that the lump sum alimony award was the setting apart of the husband's separate property for the support of the wife and, as such, was a proper order within the statute. Further, since the statute also provides that an award of alimony shall cease upon the death of either husband or wife or upon her remarriage unless otherwise ordered by the court we do herewith order that the provisions of this decree shall forthwith become a charge against the husband's estate. In addition, to further supplement these protective features it is ordered that the husband shall forthwith set apart in a trust approved by the district court herein the lump sum heretofore decreed from which monthly installments shall be paid to the wife as periodic alimony installments until her death or her remarriage. In the event of the husband's prior death, of course, the monthly payments will continue as a charge against his estate payable from

[2]J. DuCanto, The case for More Frequent Use of Installment Payment of Lump Sum Alimony in Divorce Settlement Agreements and Judgments, 6 Law Notes 35, 40 (1970): "The use of lump sum settlements in divorce cases has achieved continuing and unvarying acceptance and support by the Courts of virtually every state in the nation, both by way of enforcement of the provisions of such agreements irrespective of lamentable and valid changes of circumstances on the part of either party to them, as well as by reason of numerous court decisions disavowing the inherent power of a court to change their terms or conditions." (Footnotes omitted.)

the appropriated fund until the wife dies or the fund is exhausted. Thus, the husband's property is being set apart for the support of his wife as authorized by law.

3. There were no children born of the marriage but the Sargeants in 1958 assumed responsibility for the care, control and custody of Clarence Michael Estes, now also known as Michael C. Sargeant, who was then four years of age, and 15 years of age at the time of trial.

Michael was the son of Matilda Sargeant's niece. The child was abandoned by his natural parents who are still alive, but their whereabouts are in doubt. With the parents' consent Michael had lived with his grandmother, Matilda's sister, until he came to live with these parties.

While the evidence of their intention to adopt him is inconclusive he was treated as their natural born son in all respects. Harry Sargeant provided full support, maintenance and education for the child. Neither the grandparents nor the natural parents ever requested his return. He was given their name and Harry Sargeant had established trust funds for the child's education and had made provision for him in his will. When these proceedings were instituted Harry promised to buy Michael a home and an automobile but he also threatened to cancel those promises and to cease future support and all other benefits being provided if Matilda defended against his divorce action.

The question now is whether the trial court's order compelling the husband to establish a $50,000 trust fund for the boy is valid. We must hold that it is not.

Evidence of the husband's affection for the child is manifold, but in the absence of even an unfulfilled promise to adopt, the doctrine of equitable adoption cannot apply. Bower v. Landa, 78 Nev. 246, 371 P.2d 657 (1962); Fuller v. Fuller, 247 A.2d 767 (D.C.Ct.App. 1968). The trial court instead sought to support the $50,000 trust fund on the oral agreement to support the boy. This, of course, establishes their standing in the place of a parent (loco parentis) but one may abandon the burdens attendant upon such status at any time. Farris v. Farris, 365 P.2d 14 (Wash. 1961); Franklin v. Franklin, 253 P.2d 337 (Ariz. 1963); Chestnut v. Chestnut, 147 S.E.2d 269 (S.C. 1966); see also 18 S.C.L.Rev. 541 (1966). Nor will bare promises of future support convert this status to a degree of permanence on the theory that the husband is estopped from withdrawing from those promises. Fuller v. Fuller, supra; cf. Clevenger v. Clevenger, 189 Cal.App.2d

658, 11 Cal.Rptr. 707, 90 ALR2d 569 (1961); also People v. Sorensen, 437 P.2d 495 (Cal. 1968); Niesen v. Niesen, 157 N.W.2d 660 (Wis. 1968); Wilson v. Wilson, 14 Ohio App. 2d 148, 237 N.E.2d 421, 426 (1968).

Affirmed in part, reversed as to the trust for the child and remanded to the trial court to execute a modified decree in accordance with this opinion and for such other and further proceedings as the trial court shall deem necessary for the purposes hereof.

BATJER, MOWBRAY, and GUNDERSON, JJ., concur.

THOMPSON, J., dissenting in part:

I agree with the majority except for that part of the opinion overruling firmly established law [NRS 125.040; Allis v. Allis, 81 Nev. 653, 408 P.2d 916 (1965), and the cases therein cited] in order to approve the trial court award of fees for the wife's counsel. There is, of course, no duty imposed upon this court to follow decisions which are absurd or obsolete. Blind adherence to the requirements of stare decisis is not consonant with justice. On the other hand, precedent should not be changed unless the policies which underlie the proposed new rule are strong enough to outweigh the policy supporting the existing rule and the disadvantages of making a change. The majority opinion does not speak to this point.

I am not aware that the law regarding suit money as it existed until today worked in such a way as to preclude a wife from enjoying her day in court with competent representation. Consequently, I perceive no good reason for a change of law, and fear that such change may result in the mischief of redistributing the separate wealth of a party litigant simply because the opportunity to do so is present.