ANDERSON, APPELLEE, *v.* CONN, APPELLANT.

(No. 3786—Decided May 19, 1941.)

*Mrs. Eva Epstein Shaw,* for appellee.
*Mr. Benjamin H. Fisher* and *Mr. Clarence G. Smith,* for appellant.

LLOYD, J. On January 6, 1940, the plaintiff, Leila Anderson, filed a petition in the Court of Common Pleas against the defendant, Albertus Brown Conn, praying therein for a judgment of $2,184.60 for "food, clothing, shelter and all other necessaries" furnished

Yvonne Conn, ten-year old child of the defendant, of whom she "has had the care, custody and control from June 15, 1930, up to the present time."

The plaintiff alleges also "that a fair and reasonable value of such necessaries so supplied is seven dollars per week" and that the defendant, although repeated demands have been made on him therefor, "has failed and refused to pay any amount on account thereof." To this petition the defendant filed a general denial.

The trial court, a jury having been waived, found in favor of the plaintiff in the sum of $1,363.50, for which sum, after motions for a new trial and for judgment on the pleadings had been overruled, judgment was entered. From this judgment the defendant appealed to this court on questions of law, assigning as errors the overruling of motions for judgment on the pleadings and on the opening statement of counsel for plaintiff, and the overruling of defendant's motion, at the conclusion of the evidence, for a finding in his favor. Error in the admission and rejection of evidence is also complained of, and finally it is urged that the judgment is contrary to law and against the weight of the evidence.

The plaintiff was a sister of Alice Booker whom the defendant married in February of 1928 at Bowling Green, he then being a student at the university of Michigan. Subsequently, Mr. and Mrs. Conn resided in an apartment in Toledo where their daughter was born February 9, 1930. On or about June 15, 1930, Mrs. Conn, suddenly and without the knowledge of the defendant, left the Toledo apartment, removing therefrom the furniture and personal belongings of both herself and husband, and went to her parents' home, 806 South 13th street, Maywood, Illinois, taking the child with her. Mr. and Mrs. Conn thereafter never lived together. After going to Maywood, Mrs. Conn became mentally deranged and was confined in Kan-

kakee Hospital in Illinois and also in the state hospital at Toledo. She died in April 1933, in a Chicago hospital, since which time the child Yvonne has been at the home of the parents of plaintiff, where the plaintiff also resides at least part of the time. The plaintiff is a clerk in the Chicago Post Office at an annual salary of $2,300, her husband and herself also having an apartment in the Vincent Hotel, 601 East 36th street, Chicago.

At some time—the record does not disclose the date —Mrs. Conn petitioned the Court of Common Pleas of Lucas county for a divorce and for alimony and the custody of and an allowance for the support of the daughter. This action, however, seems never to have been tried and was dismissed for want of prosecution at plaintiff's costs on January 30, 1932.

The defendant again married in August of 1933, his present wife having a daughter by a former marriage. From the evidence it appears that the plaintiff lived with her parents, as does also a sister Lucille, but according to the plaintiff she alone paid for the food, clothing, school expenses, etc., of Yvonne. "No one," she says, "has spent a nickel on her for ten years except me." The plaintiff testified that she never received a reply to letters sent to Conn requesting "some money for the baby" and that he contributed nothing to the child's support while she was in Chicago and that he never came there to see her. She does say, however, that at her request her brother George, a lawyer in Chicago, wrote a letter to Conn "about in December," 1936, and that she read the answer of Conn thereto immediately upon its receipt at the office of the brother, 412 East 47th street, Chicago, to which address it was directed. She said Conn's letter was in effect "that after he paid his own expenses he could not afford to pay anything else, that he just made enough money to take care of himself."

In reply to a question as to what else was in the

letter, she said "I don't remember." Conn testified as follows, as to what he said in his letter to Booker, plaintiff's brother:

" 'I was unable to support a family in Toledo and to send money to Chicago' but that 'I was ready and had been ready and willing over the entire period since 1930 to take the custody of my child into my home and support and educate it as I deemed fit, and I requested that the child be sent to me so that I might do that.' "

This testimony of Conn is not denied.

Mrs. Anderson further testified that about Thanksgiving of 1939, in response to a letter from Mrs. A. B. Conn of Washington, D. C., mother of the defendant, Yvonne was sent to Washington to visit her paternal grandparents where, according to the evidence, she has since been and now is, and where, it is admitted, she is receiving proper care and attention. Mrs. Anderson says that she expected that the child would be returned to her as requested when she permitted her to go to Washington. Mrs. Anderson also stated that she never offered by letter or otherwise to send the child to her father and never wanted him to have her, that she has always objected to the father seeing his daughter, that her attitude in that respect has not changed and that she so advised Mr. and Mrs. Conn by letter when the child was sent to them in Washington. "Sure," she testifies, "I objected to him seeing her."

In one of the letters to Mrs. Conn in Washington, the plaintiff writes as follows:

"I am very sorry that you informed Al that the baby was down there, I asked you so very kindly not to do so. I heard that Al was down there to see her. My brothers are very angry about it. I sent the baby to see you only. It was against my brother's wishes but you promised you would not write her father that she was there. I am very, very sorry and will never get over it. She is only ten years old and had plenty

cf time to see her father when she is older and can understand."

While in Chicago, the child was not permitted to write to her father but has done so from Washington. A Reverend Stanley, a witness for plaintiff, testified that a week or two after April 24, 1933, the date of the burial of Mrs. Conn, the child's mother, he talked with the defendant but that all that he remembered of the conversation was that "Mr. Conn wanted his child" and "I thought it advisable for the child to remain there at Chicago."

Conn testified that he had not seen his daughter since June 1930, until Easter, 1940, when he saw her at his parents' home in Washington and that while he was in Chicago in February or March of 1935, attending a convention, Mr. George Booker, the lawyer-brother of the plaintiff, telephoned him that "you will never see that child as far as I am concerned; that goes for Leila too." Conn says Mr. Booker also told him the same thing in Toledo in 1931 during the pendency of the divorce action. He testified also that he made several requests for the custody of the child "by way of letter writing" to Mrs. Alice Booker, the mother of his deceased wife in whose home he was informed and understood the child was living, and that he also personally requested of Mrs. Booker the custody of his daughter when his mother-in-law was in Toledo in 1932 and 1933 to see his wife at the hospital. He testified that he never consented to Mrs. Anderson assuming the custody, care and support of Yvonne but, on the contrary, expressed his opposition thereto and his desire to have his daughter with him. Admittedly, Mrs. Anderson's retention and custody of the child was not pursuant to any court order nor is it in dispute that Conn did not contribute to her support while in Maywood. Neither of the Booker grandparents nor either of the brothers of the plaintiff was called as a witness.

The foregoing are the pertinent facts as disclosed by the evidence and as stated by counsel for defendant in their brief. In her reply brief counsel for plaintiff says "the history of the case and the pleadings as stated by defendant-appellant are substantially correct."

The motion for judgment on the pleadings was properly overruled because the allegations therein of the plaintiff that she "has had the care, custody and control of the child" would, until shown otherwise, presume legal custody.

The motion for judgment on the opening statement of counsel for plaintiff might properly have been granted, but since it was overruled, this court will look to the facts in evidence for the answer to the legal problem presented.

The cause of action of the plaintiff is not founded upon any court order or judgment but upon the implication of a contract with defendant from the mere fact of the furnishing by plaintiff of care and support of the child Yvonne, whom she retained in her custody over the protest of the father, with the avowed intent of depriving him of the privilege of visiting her and with the determined and announced purpose of preventing his taking her to his own home, as was his legal right. The law imposes upon a father the duty of caring for and supporting his minor children in so far as he is able to do so. This, of course, is also a moral obligation; however, he will not be compelled to compensate a third person who, without his consent, has assumed that obligation, for the services thus rendered by her. Conn was not required to indulge in litigation in Cook county, Illinois, to secure possession of his daughter, nor to have gone there to get her, in view of the expressed intention of plaintiff, her brothers and parents, to refuse him that privilege. It is not within the province of this court to decide where or in

whose custody it is best for the child to be. That prerogative rests with another tribunal.

The only question presented here is whether the judgment of the Court of Common Pleas should be affirmed or reversed. The undisputed facts are so clear and determinate as to require no further comment. The judgment is reversed and this court, proceeding to render the judgment which it was incumbent on the Court of Common Pleas to have rendered, orders and adjudges that the petition of the plaintiff be dismissed and that the defendant recover a judgment for costs.

*Judgment reversed and*
*final judgment for appellant.*

OVERMYER and CARPENTER, JJ., concur.