PALMER, f.k.a. Harrold, Appellee,

v.

HARROLD, Appellant.

[Cite as *Palmer v. Harrold* (1995), 101 Ohio App.3d 732.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 94 CA 74.

Decided March 17, 1995.

*William Schenck,* Greene County Prosecuting Attorney, for appellee.

*David W. Cox,* for appellant.

---

Wolff, Judge.

Steven Harrold appeals from the judgment of the Greene County Court of Common Pleas which ordered that a portion of his child support arrearage payments to the Child Support Enforcement Agency ("CSEA") should be directed to Gary Palmer.

Steven Harrold and Lori Harrold, now known as Lori Palmer, were divorced on September 17, 1985. For the sake of clarity, we will refer to Lori Harrold Palmer as Mrs. Palmer throughout this opinion. Mrs. Palmer was granted custody of the parties' two minor children, and Mr. Harrold was ordered to pay $50 per week in child support. On June 11, 1987, Mr. Harrold was relieved of his obligation to pay support because the children were residing with him, but he was ordered to pay on his arrearage at the rate of $25.50 per month. The support order was again modified on March 20, 1991. At that time, the children were again residing with Mrs. Palmer, and Mr. Harrold was ordered to pay $85 per week in current support plus $10 per week on his accumulated arrearage.

On March 4, 1994, the CSEA filed a notice to the court that the agency had learned that the children were no longer living with Mrs. Palmer. Pursuant to R.C. 3113.21(G)(4)(b), the trial court ordered the agency to impound any support payments received, and the court set the matter for a hearing before a referee. At the hearing conducted April 19, 1994, Mrs. Palmer stated that the children were residing with her husband, Gary Palmer. She explained that she and Mr. Palmer were separated, that she had left the marital residence, and that she had let the children remain in their home. Mrs. Palmer also testified that she still bought the children "all the material things that they need." Mr. Harrold

testified that he was presently unemployed and incarcerated, apparently on a support-related offense.

By report and recommendation of June 1, 1994, the referee found that the children were no longer living with Mrs. Palmer as of September 1992, and that Mr. Harrold's current support obligation to Mrs. Palmer ended at that time. The referee then apportioned Mr. Harrold's support arrearage among Mrs. Palmer, Mr. Palmer, and the Department of Human Services. No objections were filed to the referee's report, and on June 22, 1994, the trial court adopted the report and recommendations in their entirety. On July 26, 1994, a withholding order was issued to Mr. Harrold's employer, ordering that an amount consistent with the March 20, 1991 support order be withheld from his income.

Mr. Harrold asserts a single assignment of error:

"The domestic relations court erred in finding that the appellant owed child support payments to Mr. Palmer."

■ Mr. Harrold argues that the trial court erred in ordering that a portion of his payments on his child support arrearage be directed to Mr. Palmer. Mr. Harrold does not appeal from the portion of the trial court's judgment which ordered that the remainder of his payments on his child support arrearage be directed to Mrs. Palmer and the Department of Human Services. The appeal appears to be limited to apportionment of arrearage because Mr. Harrold was unemployed at the time of the hearing. However, it appears from the remarks of the referee at the hearing that should Mr. Harrold become employed, current child support payments, if any, will be directed to Mr. Palmer.

■ Initially, Mr. Harrold argues that Mr. Palmer's relationship with the children, as their stepfather, did not confer any rights or impose any duties on Mr. Palmer. While it is true that the stepparent relationship, without more, does not confer any rights or impose any duties, the situation may be different where the stepparent has taken the children into his home. A stepfather who " 'takes a child * * * into his custody as a member of his own family' " may stand *in loco parentis* to the child. *Ray v. Ray* (Dec. 14, 1989), Belmont App. No. 89–B–4, unreported, 1989 WL 150825, quoting *Wilson v. Wilson* (1968), 14 Ohio App.2d 148, 154, 43 O.O.2d 340, 343, 237 N.E.2d 421, 426. A stepfather who receives his stepchildren into his home and educates and supports them stands *in loco parentis* and is liable for the children's support. *Ray, supra.* From Mrs. Palmer's statements at the hearing before the referee, it appears that Mr. Palmer stood in a closer relationship with the children than the mere label of stepfather implies. Thus, we cannot say that he had no duties toward the children.

■ Further, Mr. Harrold contends that Mr. Palmer "voluntarily and without expectation of payment undertook to contribute" to the support of Mr. Harrold's

and Mrs. Palmer's children. Mr. Harrold argues that he and Mr. Palmer never made any type of arrangement by which he agreed to pay Mr. Palmer for the support of the children. He concludes, therefore, that Mr. Palmer was not entitled to recover any payments from Mr. Harrold because Mr. Palmer was acting gratuitously. In support of his argument in his appellate brief, Mr. Harrold relied upon *Kimmel v. Dorshimer* (1924), 19 Ohio App. 257, and *Anderson v. Conn* (1941), 68 Ohio App. 1, 22 O.O. 45, 38 N.E.2d 325. However, both of those cases predate the enactment of R.C. 3103.03(D), which states:

"If a parent neglects to support his or her minor child in accordance with this section and if the minor child in question is unemancipated, any other person, in good faith, may supply the minor child with necessaries for the support of the minor child and recover the reasonable value of the necessaries supplied from the parent who neglected to support the minor child."

Based upon the arrearage accumulated from September 1992 until April 1994, it appears that Mr. Harrold made no support payments during that time, which was the time that Mr. Palmer had physical custody of the children. In accordance with R.C. 3103.03(D), because Mr. Harrold "neglected to support" his children, Mr. Palmer would have had a cause of action to recover the value of the necessaries that he supplied for the children. Mr. Palmer would have had the right to recover that amount regardless of whether Mr. Harrold agreed to pay Mr. Palmer to support his children. Accordingly, the authority Mr. Harrold cited does not demonstrate that he could not be held liable to Mr. Palmer.

█ Finally, Mr. Harrold argues that the trial court should not have granted support payments to Mr. Palmer because he had no "court order or right to legal custody of the children." The original decree of divorce awarded legal custody of the children to Mrs. Palmer, and that order has never been modified. At the hearing before the referee, Mrs. Palmer stated that she wrote a letter for Mr. Palmer giving him "temporary physical custody" of the children. As used in the Revised Code, "legal custody" vests in the custodian "the right to have physical care and control of the child *and to determine where and with whom he shall live.*" (Emphasis added.) R.C. 2151.011(B)(9). See, also, *In re Hadley* (May 6, 1991), Greene App. No. 90–CA–117, unreported, 1991 WL 227737 (implicitly allowing parent with legal custody to vest physical custody in a third party); *In re Reese* (1982), 4 Ohio App.3d 59, 4 OBR 109, 446 N.E.2d 482 (same). Therefore, Mrs. Palmer had the right to decide that the children were going to live in the Palmers' marital residence with Mr. Palmer. If Mr. Harrold did not approve of this arrangement, he should have petitioned the trial court to change legal custody.

While the arrangement developed by the trial court, wherein the child support payments were directed to a third party who did not have legal custody, is

unusual, it does not appear to be improper. This matter was before the trial court pursuant to a R.C. 3113.21(G)(4)(a) notice. That section requires notice to be given to the CSEA "of any reason for which the support order should terminate, including * * * [a] change of legal or physical custody of the child." After receiving the notice, the CSEA conducted an investigation and notified the court that the children no longer lived with Mrs. Palmer. Upon receipt of the notice, pursuant to R.C. 3113.21(G)(4)(b), the court ordered any future support payments to be impounded and set the matter for a hearing. The statute gave the trial court the authority to determine "whether the support order should be terminated or modified or *whether the court should take any other appropriate action.*" (Emphasis ours.) *Id.* Given the fact that the children were living with Mr. Palmer and neither parent was attempting to change that circumstance, it was not unreasonable for the trial court to conclude that it would be appropriate for the CSEA to direct support payments made by Mr. Harrold to Mr. Palmer. This arrangement allows the support payments to more directly benefit the children than if Mrs. Palmer were to act as a middleman.

Finally, we note that Mr. Harrold was in no way prejudiced by the orders of the trial court. As the referee explained to him at the hearing, "[his] child support obligation remains. However, the payments, once they start coming in, will be directed to the stepfather until notice of [the trial] court." In other words, Mr. Harrold still has a duty to support his children, and the order requiring him to make child support payments directly to the CSEA remains in effect. The only thing that was changed was the person receiving the support payments from the CSEA. Accordingly, the only person who may have been prejudiced by the court's order was Mrs. Palmer, who had been receiving the support payments before the trial court's order in this matter. However, she has not appealed from the judgment and apparently is not complaining.

For the foregoing reasons, the trial court did not err in ordering either a portion of the arrearage or any current support payments to be directed to Mr. Palmer.

Accordingly, the assignment of error is overruled.

The judgment of the Greene County Court of Common Pleas is affirmed.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.