The parties to this case are adjacent landowners, and their dispute arises over a sixteen-foot wide parcel of land that runs between their properties. Appellants/cross-appellees, Matthew and Michelle Glaser, appeal from an order granting summary judgment in favor appellees/cross-appellants, James and Pamela Bayliff, as to the southernmost six feet of the parcel. The court found that the Bayliffs had established an adverse possession of that strip of land. The Bayliffs have cross-appealed the grant of summary judgment in favor of the Glasers with regard to the remainder of the parcel. The court found that the Bayliffs could not show constructive adverse possession over the northern ten feet of the disputed strip. We agree with well reasoned opinion of the trial court that the evidence submitted for summary judgment showed adverse possession of the six-foot wide section of land. We also agree with the court that the Bayliffs' claim for constructive adverse possession failed because the Glasers and their predecessors also used the northern ten feet of the strip. Accordingly, we affirm the judgment of the common pleas court in its entirety.
 I.
The Glasers own the property located at 326 West Walnut Street in Tipp City, Ohio. That property is located on Inlot 489, at the corner of Walnut and Seventh streets in Tipp City. The Glasers purchased that property in 1994. The Bayliffs own the property at 327 West Main Street in Tipp City, where they live and where they operate the Frings and Bayliff Funeral Home. That property lies on Inlots 193 and 194. Inlot 194 is adjacent to Inlot 489, at the corner of Seventh and Main Streets. In early 1996, the Glasers discovered that the property that they were occupying was six-feet shorter, running north to south, than the extent of land conveyed to them by deed. They commissioned a survey which showed that six feet of Inlot 489 lay beyond a picket fence constructed by James Bayliff years before the Glasers purchased their property.
This case originated on December 3, 1996 when the Glasers filed a suit for declaratory relief against the Bayliffs in the Miami County Common Pleas Court. The Glasers sought ownership of the six-foot strip of land lying south of the picket fence. They also sought right-of-way use over a ten-foot alley lying between the two lots, which had been vacated by the city in 1969 and joined to Inlot 194, and over another fourteen-foot wide alley to the south of the vacated alley. On appeal, the Glasers have abandoned their claims over these latter two strips of land.
The Bayliffs responded to the suit by counterclaiming for ownership over, not only the six feet lying south of the fence, but also an additional ten-foot strip lying north of the fence. The Bayliffs had ostensibly purchased the whole sixteen-foot tract in 1978 for $500. The deed that conveyed the property was invalid, however. Thus, the Bayliffs had to rely on an adverse possession claim for the land both north and south of the picket fence.
The relevant factual history of this land conflict begins in 1958. At that time, Inlot 489 was owned by Edna Wells. Inlot 194 was then owned by Otto and Isabel Frings, who operated the Frings Funeral Home on the property. On December 1, 1958, Wells conveyed the whole of Inlot 489 to Sarah Seighman. The deed conveying the whole lot was duly recorded.
Wells died on October 6, 1962. On October 19, 1962, the Frings purchased the southernmost sixteen feet of Inlot 489 from the estate of Edna Wells for $400. That deed was also recorded. The executor of the estate could not convey good title to the sixteen-foot strip of property, however, because the whole inlot had already been conveyed to Sarah Seighman approximately four years earlier. The Glasers are the successors in interest to Seighman.
The Frings purchased the extra property in order to use a garage that was actually located on an old ten-foot wide alleyway that ran between Inlot 489 and Inlot 194. After 1962, Otto Frings used the garage as a private garage, with a driveway that ran through the alley onto Seventh Street. Later, when Frings discovered that he did not have title to the land under the garage, he petitioned the city to formally vacate the old alley. On November 17, 1969, the city enacted Ordinance No. 43-69 vacating the ten-foot wide alley that ran between Inlots 489 and 194. The property was ceded to the abutting property owners. Because Otto Frings had occupied property on both sides of the alley, he took over the whole vacated alley.
James Bayliff began to reside at the Frings Funeral Home in 1965, where he worked as an employee. On January 1, 1971, Otto and Isabel Frings sold lot 194 and the funeral home business to Bayliff. At that time, however, the Frings did not convey the title to the vacated alley or any of the property to the north. Later, in 1978, they sold the alley and title in the south sixteen feet of lot 489 to James Bayliff. Sometime between 1983 and 1985, James Bayliff tore down the old garage on the vacated alley and constructed the wooden fence that now marks one boundary within the disputed property. (A map showing the location of the wooden fence and the vacated alley in relation to the two adjoining lots is attached to this opinion as Appendix A.)
Given this evidence of ownership, the trial court found that the Glasers had held legal title to all of Inlot 489, including the two strips of disputed land immediately north and south of the wooden fence. The court also held, however, that the Bayliffs and their predecessor in interest, Otto Frings, had established an adverse possession over the six feet of land that lay south of the wooden fence by exclusive use of that land for at least twenty-one years. The court nevertheless rejected the Bayliffs' argument that they held constructive possession over the whole sixteen-foot wide strip deeded to the Frings in 1962 and then to the Bayliffs in 1978. Although the court recognized that they held the land under color of title, it found that the Bayliffs could not show exclusive possession of the strip north of the fence. The Glasers and their predecessors had also maintained that strip of land. Accordingly, the court granted summary judgment in favor of the Bayliffs as to the six-feet south of the fence, and in favor of the Glasers as to the ten feet north of the fence.
Both parties have appealed from that judgment.
 II.
The Glasers raise two assignments of error on appeal, which are as follows:
 I. THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT FOR THE DEFENDANTS.
 II. THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF-APPELLANTS' MOTION FOR SUMMARY JUDGMENT.
Both these assignments of error relate to the question of whether the Bayliffs successfully established an adverse possession of the six-foot strip of Inlot 489 south of the picket fence.
To acquire title in land through adverse possession, the party claiming the land must show exclusive possession of the land and open, notorious, continuous, and adverse use of the land for a period of twenty-one years. Grace v. Koch (1998),81 Ohio St.3d 577, 579; Pennsylvania R. Co. v. Donovan (1924),111 Ohio St. 341, 349-350. The twenty-one year period is governed by the statute of limitations for the recovery of real estate, R.C. 2305.04. The remaining elements are creatures of the common law. See Note, Requisites of Adverse Possession in Ohio (1953), 22 U.Cin.L.Rev. 480, 481. Recently, the Supreme Court has held that each element of an adverse possession claim must be proven by clear and convincing evidence. Grace, 81 Ohio St.3d 577, syllabus
The Glasers argue that the Bayliffs failed to show, on summary judgment motion, that they could prove each element of adverse possession by the necessary quantum of evidence. In particular, the Glasers direct their arguments to the time before James Bayliff erected the picket fence, which occurred sometime between 1983 and 1985. The fence stood for only eleven to thirteen years before the Glasers brought suit. The Glasers argue that the evidence of adverse possession before that time was insufficient.
As an initial matter we note that the Bayliffs' adverse interest in the property south of the fence is not seriously in doubt from the time that the fence was erected. When a party erects a fence and treats the land on one side of the fence as his own, there is generally little question that possession is exclusive and use of the land is open, notorious, and adverse to the interests of the record owner. See Rader v. Brock, (Oct. 13, 1997), Preble App. No. CA97-03-007, unreported, at 3 (discussing the effect of a fence on adverse possession cases). The Glasers do not devote much of their argument to the evidence of adverse possession from that time forward. Viewing that evidence in the Glasers' favor, as we must in reviewing a grant of summary judgment, use of the land after the fence was erected only establishes the requisite elements of adverse possession for eleven years before this action was initiated. The question remains whether the Bayliffs could prove each element of adverse possession for at least the ten years preceding the erection of a fence.
In that regard, we note that the entire sixteen-foot strip was held under color of title by James Bayliff since 1978, and by Otto and Isabel Frings since 1962. As already explained, neither deed successfully conveyed any property, because the whole of Inlot 489 had already been deeded to Sarah Seighmen in 1958. The later deeds involving the sixteen-foot wide parcel fell outside of the chain of title. The defective deeds are still relevant to the issue of adverse possession, however, because they show that the Bayliffs and their predecessors held the disputed land under color of title.
An individual acquires color of title when a written conveyance appears to pass title but does not do so, either from want of title in the person making it, or the defective mode of conveyance. Montieth v. Twin Falls United MethodistChurch (1980), 68 Ohio App.2d 219, 221. Although claim under color of title is not necessary for showing adverse possession in Ohio, it is sufficient to show that possession was hostile or adverse. Id. at 222; Note, Requisites of Adverse Possession in Ohio, supra, at 486.
The Bayliffs did not hold color of title to the disputed property for the entire twenty-one year limitations period. Nevertheless, they are permitted to treat the adverse possessory interest of the Frings as though it were their own, using the legal process that is known conceptually as "tacking." See Zipf v. Dalgarn Successive (1926), 114 Ohio St. 291, paragraph two of the syllabus. Using tacking, a party claiming adverse possession can establish the continuity of his use over the statutory limitations period by treating any preceding adverse uses as his own, as long as the claimant is in privity with the prior users. Id. The Bayliffs were in privity with the Frings by virtue of their deeds and through subsequent possession of the adjoining lot. Thus, the Bayliffs were able to show the element of hostile or adverse use going back to 1962.
The Glasers' chief argument is that the evidence of land use prior to 1983, by the Bayliffs or by the Frings, was insufficient to show open and notorious use that could establish and an adverse possession. "The requirement that a use be open and notorious is for the protection of those against whom possession is claimed to be adverse, to enable them to protect themselves by preventing its continuance."Jennewine v. Heinig (Dec. 29, 1995), Greene App. No. 95 CA 12, unreported, at 17.
The Glasers argue that any adverse use of the land amounted to little more than lawn maintenance and therefore was not sufficient to prove open and notorious use. Before the fence was erected, the disputed land was a yard that ran across both lots. James Bayliff, and before him Otto Frings, maintained the lawn on the disputed land by mowing the grass and performing other yard maintenance. In this regard, the Glasers cite a number of cases, also cited by the trial court in its opinion, holding that grass-mowing and like activities are not sufficiently open and notorious to establish adverse possession. Montieth v. Twin Falls United Methodist Church
(1980), 68 Ohio App.2d 219, 225; Oeltjen v. Akron AssociatedInv. Co. (1958), 106 Ohio App. 128, 130; Meyer v. Pockros
(1924), 18 Ohio App. 506, 511; Stover v. Templeton, (Mar. 11, 1996), Lawrence App. No. 95CA32, unreported, at 2; Gehron v.Petry (Jan. 23, 1995), Preble App. No. CA94-04-008, unreported, at 1; Cannone v. Levy (Dec. 20, 1991), Trumbull App. No. 91-T-4560, unreported, at 3; Briegel v. Knowlton (June 20, 1989), Allen App. No. 1-87-45, unreported, at 2.
Although generally not sufficient to show adverse possession, lawn mowing is still relevant evidence of open and notorious use, and when combined with other activities under the proper circumstances it may help to establish an adverse possession. See Vanasdal v. Brinker (1985), 27 Ohio App.3d 298, 299; Coburnv. Gebauer (Jan. 11, 1996), Seneca App. No. 13-95-14, unreported, at 2. See also Thompson v. Hayslip (1991), 74 Ohio App.3d 829,833. ("Avoidance of a 'bright line' * * * is necessary since a use which notifies an owner in one locale that another is asserting an adverse claim to his land, may not be a sufficient use to so notify an owner in another area.") As is often true, individual occurrences that may be insufficient proof of some legal concept in themselves, when looked at cumulatively can establish a point conclusively. Quae nonvaleant singula, juncta juvant. Black's Law Dictionary (6 Ed. 1990)("Things which do not avail when separate when joined avail.").
In this case, there was undisputed evidence of other uses besides lawn maintenance that the trial court found conclusive of adverse possession when taken in context. Evidence showed that the Bayliffs installed a sprinkler system on the property in 1992. In the early eighties, they repaired the sidewalks that lie on the Western edge of the disputed strip. And in 1978, James Bayliff planted a maple tree directly within the disputed property. These events, while sufficient to establish open and notorious use, take us back only eighteen years before the Glasers initiated this action. To establish adverse possession, land use must be open and notorious continuously for twenty-one years.
The most significant evidence of open use extending back before the twenty-one year period existed in relation to the private garage that stood in the now-vacated alley and that Otto Frings used since 1962. As the trial court noted, the location of the garage itself did not establish adverse possession because it was located entirely within the alley. The northern wall of the garage, however, stood only one-and-a-half feet from the southern edge of Inlot 489. The walk-in entrance to the garage was located on its north side. The entrance to the garage had a step, approximately one foot deep, that led to a three-and-a-half foot stone slab. That slab extended into the disputed strip. The location of the slab also showed that pedestrians walking to and from the garage had to cross through the disputed property. Otto Frings testified that he made that walk nearly every day before 1978 because he parked his personal car in the garage.
We agree with the trial court that this use of the property showed an adverse possession, especially when looked at in conjunction with evidence that showed the Frings and Bayliffs maintained the yard north of the garage by mowing the grass and planting flowers. Nevertheless, the Glasers raise several distinct objections to the adequacy of the evidence relating to the use of the garage. We will attempt to address these objections.
First, the Glasers claim that the use of the property as means of accessing the garage ended when the garage was destroyed. Thus, they claim, use was not continuous. It is not necessary however, that any given use of the land continue for the twenty-one year period. See, e.g., Davis v. Konjicija
(1993), 86 Ohio App.3d 352, 354. It is only necessary that the adverse possessor act as the owner of the land throughout that period, even if the character of the land-uses might change. After the garage was destroyed, the Bayliffs began to use the land even more openly by constructing a fence across it. Thus, this argument is unavailing.
Second, the Glasers argue that the evidence was insufficient to warrant summary judgment, especially in light of the Bayliffs' burden of proving their adverse possession claim by clear and convincing evidence. See Grace, 81 Ohio St.3d 577, syllabus. Summary judgment is appropriate when the movant demonstrates "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co., (1978),54 Ohio St.2d 64, 66. The effect of the higher standard of proof on the propriety of summary judgment is subtle. The existence of any material factual dispute would preclude a grant of summary judgment. Nevertheless, even in the absence of a factual dispute, the higher standard of proof may affect the determination of whether reasonable minds must conclude that the Bayliffs should prevail.
Here, there were no relevant factual questions in dispute. The question for the court was whether the Bayliffs' evidence of adverse use was enough to prove an adverse possession. That evidence also had to be clear and convincing as matter of law. The Glasers argue that testimony about lawn maintenance is insufficient of itself to establish an adverse possession under this analysis. They further argue that the physical structures around the garage that showed an occupation of the land before the fence was erected were too insignificant and the intrusion too modest to work an adverse possession. We disagree.
The Bayliffs showed that open and notorious use was made of at least some part Inlot 489 south of the fence for over twenty-one years. That evidence was significant, and nothing brought that evidence into question. Even if use were confined to the extent of the physical presence of the stone slab, that would have been sufficient to prove the Bayliffs' claim as to that part of the disputed land. When that evidence is considered with the evidence of lawn maintenance extending back to 1962, little doubt can remain that the Bayliffs actually possessed the property south of the current fence line for the limitations period. As already explained, although evidence of lawn maintenance is generally insufficient to show open and notorious use, when combined with other uses it can be sufficient. In this case, the evidence was sufficient to meet the Bayliffs' burden in summary judgment.
Therefore, in accordance with the foregoing, we overrule the Glasers' two assignments of error. We also affirm the grant of partial summary judgment recognizing the Bayliffs' ownership of the land south of the picket fence. We turn, then, to the Bayliffs' cross-assignment of error.
 II.
In a single assignment of error the Bayliffs assert that:
 I. THE TRIAL COURT ERRED IN DENYING A PORTION OF APPELLEES/CROSS-APPELLANT'S SUMMARY JUDGMENT MOTION BECAUSE THE ADVERSE POSSESSION OF THE DISPUTED SIX FOOT OF PROPERTY IS CONSTRUCTIVELY EXTENDED TO THE REMAINING TEN FEET OF PROPERTY AS DESCRIBED IN THE COLOR OF TITLE TO THE PROPERTY WHERE THE APPELLANTS/CROSS-APPELLEES FAILED TO SET UP THE AFFIRMATIVE DEFENSE OF ADVERSE POSSESSION.
As already noted, the Bayliffs held the entire sixteen-foot wide strip under color of title. The Bayliffs claim, therefore, that they were entitled to the land both north and south of the picket fence by virtue of constructive possession. Under that doctrine, when a party holds a parcel of land under color of title but only occupies a portion of that land, he is "presumed to hold by constructive possession to the extent of the boundaries called for in his paper title, in the absence of any adverse possession, though there be no inclosure or improvement of the residue of the tract." Humphries v. Huffman (1878),33 Ohio St. 395, paragraph three of the syllabus.
The trial court rejected this argument. The trial court's reasoning on this question is instructive. The court explained its reasoning as follows:
 Defendants rely on numerous Ohio cases to demonstrate the proposition that when a person adversely possesses a portion of a tract and does so pursuant to a deed describing the entire tract, the party is presumed to hold the entire tract by constructive possession to the full extent of the boundaries called for in the paper title in the absence of any adverse possession, though there is no enclosure or improvement of the residue of the tract. Although Defendants are entitled to this presumption, by its definition it only applies when the hostile possession of the tract is exclusive to the party claiming title by adverse possession. The record here indicates that the area north of the fence was mowed to various degrees by the owners' predecessors as well as the Defendants and their predecessors.
 This limitation upon the Defendants constructive possession claim to the ten-foot strip north of the fence is explained in the following excerpt from Note, Requisites of Adverse Possession in Ohio," 22 Univ.Cinn.L.Rev. 480, at 486-7:
 "It is sometimes the case that the possessor holds an instrument which purports to give him title to the land. The deed or instrument is the possessor's color of title, though it is totally invalid. If the claimant adversely occupies any portion of the land described in the instrument, he is considered an adverse possessor as to the entire tract. The instrument must delineate actual boundaries nevertheless, for if it does not, the possessor's claim will only be effective to the extent of his actual possession of the land — the pedis possessio. The doctrine of constructive adverse possession has arisen out of the reasonable assumption that one maintaining an adverse and hostile possession over a portion of a tract is constructively considered as holding hostile and adverse possession of the tract in its entirety if he holds a semblance of title to all of it. Of course, the requirement that the possession must be exclusive of the true owner also applies in the realm of constructive adverse possession. Should the claimant be the sole possessor in that portion of the tract in which he is in actual possession, but the true owner still be maintaining an actual possession, regardless of how slight, in some remaining portion of the tract covered by the color of title, then the claimant's color of title will be of no avail to him and the statute of limitations shall run only as to that portion of the land which he actually and exclusively possesses." [Emphasis added by the trial court.]
 This explanation is consistent with the history of adverse possession that such claims are construed strictly in favor of the owner of title, i.e., there are no equities in favor of a person who seeks to acquire the property of another by adverse possession. Monteith, supra, [68 Ohio App. 2
d at 224].
 Accordingly, the Court finds that Defendants are not entitled to title by adverse possession to the approximately ten-foot by fifty-two foot strip north of the present northern edge of the fence under the doctrine of constructive possession by color of title.
The Bayliffs argue that the trial court's analysis was incorrect because it permitted their constructive possession claim to be defeated too easily. The Bayliffs argue that, in order to defeat a constructive possession, the record owner must show all of the elements of an adverse possession as to some portion of the land. On this question, we find ourselves in agreement with the trial court.
There is case law that holds constructive possession will operate to the extent that land is held under color of title, unless some portion is held adversely by the record owner. See,e.g., Humphries, 33 Ohio St. 395, paragraph three of the syllabus ("in the absence of any adverse possession"); Powersv. Malavazos (1927), 25 Ohio App. 450, 453 ("[U]nquestioned possession of a part of the small tract was by the color of title constructively the possession of the whole, for no part of the strip is shown to have been adversely held by the opposing interests.") Nevertheless, we do not believe that it is necessary for the record owner to show all the elements of an adverse possession claim to defeat a constructive possession. In this context, the term "adverse" means only an actual possession that is adverse or hostile to the interests of the claimant.
It is clear, for example, that the "adverse" possession of the record owner need not be held continuously for twenty-one years. See, e.g., Clark v. Potter (1876), 32 Ohio St. 49, paragraph one of the syllabus (discussing land held "adversely" at the time of the claimant's entry). Because "there are no equities in favor of a person seeking to acquire property of another by adverse holding;" Grace, 81 Ohio St.3d at 580
(quoting 10 Thompson on Real Property (Thomas Ed. 1994) 108, Section 87.05); we hold that to defeat constructive possession under color of title it is only necessary for the record owner to show an actual possession that was sufficiently open and hostile to have put the claimant on notice that his claim of title was not good to the full extent held under the defective conveyance. For the same reason, we conclude that the record owner does not have to show such a possession by clear and convincing evidence.
Here, the evidence showed that the Bayliffs' predecessor, Otto Frings, acquiesced to possession of the northern ten feet of the disputed strip by the occupants of Inlot 489. Frings apparently believed that his purchase of a sixteen foot strip included the ten-foot wide, vacant alley on which the garage sat. Thus, he thought that his purchase extended to a point only six feet into the adjoining lot, or to the current fence line. The Bayliffs continued in that acquiescence by the placement of the fence at that line.
As the trial court noted, the evidence showed that land north of the fence was variously maintained by the owners of both lots. That evidence showing some actual use of the land by the owners of Inlot 489 was sufficient under these circumstance to prevent the Bayliffs from claiming constructive possession over the entire strip. As a consequence, they were limited in their claims to the area that they actually possessed, the area granted to them by the trial court in its grant of partial summary judgment.
For this reason, we overrule the Bayliffs' cross assignment of error and affirm the grant of partial summary judgment in favor of the Glasers as to the ten-foot wide strip of land north of the current fence line.
 IV.
Having overruled both of the Glasers' assignments of error and the Bayliffs' cross-assignment of error, we affirm the judgment of trial court in its entirety.
Judgment affirmed.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Stephen E. Klein Jill Ann Henson Hon. Jeffrey Welbaum